IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

CYNTHIA KNOX                                                                PLAINTIFF

v.                                              CIVIL ACTION NO. 2:12-cv-00166-GHD-SAA

PHC-CLEVELAND, INC.
d/b/a Bolivar Medical Center                                                DEFENDANT

**MEMORANDUM OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Presently before the Court is Defendant's motion for summary judgment [38]. Upon due consideration, the Court finds that the motion should be granted.

*A. Factual and Procedural Background*

Plaintiff Cynthia Knox ("Plaintiff") brings this suit against her current employer, PHC-Cleveland, Inc. doing business as Bolivar Medical Center ("Defendant"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The following facts apparently are not in dispute:

Plaintiff is an African-American female who has been employed by Defendant since 2004 in various hourly positions. She was first hired as a nursing administrative assistant. In 2008, Plaintiff began to seek a salaried position with Defendant with the job duties of credentialing and contract compliance which would allow Plaintiff to have her own office. To date, she has not obtained such a position with Defendant. She currently is employed as an administrative assistant and does not have her own office.

Lauren Walker is a Caucasian female who was employed as an executive administrative assistant. In February of 2010, Walker was given an additional title: director of marketing. At

1

that point, Defendant gave Plaintiff some of Walker's executive administrative assistant duties and moved Plaintiff from the nursing administration office to the administrative suite. In mid-2011, Walker resigned from her position. Defendant hired Claudia Woods, a Caucasian female, to replace Walker. In late 2011, Woods resigned from the position, and Defendant subsequently eliminated the job positions of executive administrative assistant/marketing director (which was then vacant) and nursing administrative assistant (which was then held by Plaintiff). Defendant moved Plaintiff into an administrative assistant position and created the position of credentialing and contract compliance coordinator to which it transferred Billie Jean Wiley, a Caucasian female.

Plaintiff filed an EEOC charge for race discrimination based on Defendant's alleged failure to promote her to the position of executive administrative assistant and selection of Woods for the position. Plaintiff later asked the EEOC to amend her charge to include Defendant's hiring of Wiley for the credentialing and contract compliance coordinator position and Betty Britt for the marketing position. After receiving her right-to-sue letter, Plaintiff initiated this suit. Plaintiff now concedes that the two jobs at issue in this case are the hiring of Woods as executive administrative assistant in mid-2011 and the hiring of Wiley as credentialing and contract compliance coordinator. Plaintiff challenges Defendant's decisions not to hire her in these positions, contending that she was "clearly better qualified" than the selected candidates for the positions. Plaintiff alleges that she was denied promotions to those positions because of her race in violation of Title VII and Section 1981.

*B. Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact

2

and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

## C. Analysis and Discussion

Defendant argues that summary judgment should be granted on Plaintiff's race discrimination claims under Section 1981 and Title VII, specifically because (a) Plaintiff was not subjected to an adverse employment action and (b) Plaintiff cannot satisfy pretext by showing that she was "clearly better qualified" than either candidate who was hired in the positions she sought.[1]

Section 1981, known as the "equal contracts rights" provision, was enacted shortly after the Civil War and provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 defines "make and enforce contracts" as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Title VII, unlike Section 1981, is a detailed statutory scheme that "enumerates specific unlawful employment practices" and "provides remedies to employees for injuries related to discriminatory conduct and associated wrongs by employers," including race-based discrimination by employers (§ 2000e-2). *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2522, 2530 (June 25, 2013). "Title VII is central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." *Id.* at 2522. The United States Supreme Court has recognized a "necessary overlap" between Section 1981 and Title VII, holding that "Title VII was designed to supplement, rather

---

[1] In its motion for summary judgment, Defendant also argues that Plaintiff's claim based upon her non-selection in March of 2008 is time-barred. However, in her response to the motion, Plaintiff concedes that her failure to promote claim is based only on her non-selections in June or July of 2011 and August or September of 2011, respectively. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 11. Therefore, the Court need not, and does not, address this argument in the opinion.

4

than supplant, existing laws and institutions relating to employment discrimination." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)).

Because race discrimination claims brought under Title VII and Section 1981 require the same proof to establish liability, Plaintiff's discrimination claims can be analyzed under the Title VII rubric of analysis. *See Criner v. Tex.-N. M. Power Co.*, 470 F. App'x 364, 370 n.3 (5th Cir. 2012) (per curiam) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 422 n.1 (5th Cir. 2000)). Where a race discrimination claim is based on circumstantial evidence, as Plaintiff's race discrimination is here, the *McDonnell Douglas* burden-shifting framework is used. *See McCoy v. City of Shreveport, La.*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). First, Plaintiff must establish a prima facie case of discrimination. *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citations omitted)). If Plaintiff has done so, Defendant bears the burden of setting forth a legitimate, non-discriminatory reason for its decision. *See id.* If Defendant does so, the presumption of discrimination or retaliation disappears, and Plaintiff must demonstrate a genuine dispute of material fact as to whether Defendant's reasons are not the true reasons but are instead a pretext for discrimination or retaliation. *See id.* (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).[2] Based on the foregoing standard, the Court turns to the merits of Plaintiff's race discrimination claims.

---

[2] The Court notes that in the Fifth Circuit the mixed-motive framework has not yet been extended to Section 1981 claims, and it is unclear how far the United States Supreme Court's holding in *Gross v. FBL Financial Services, Inc.* has scaled back the extension of the mixed-motive application. *See generally Gross*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009); *see also Crouch v. JC Penney Corp.*, 337 F. App'x 399, 402, n.1 (2009) (finding that *Gross* "raises the question of whether the mixed-motive framework is available to plaintiffs alleging discrimination outside of the Title VII framework"). The mixed-motive framework's applicability is further called into question by the decisions of other circuits that had previously addressed the question and found it inapposite in

### a. Prima Facie Case of Race Discrimination

Plaintiff claims she was discriminated against on the basis of her race by not being promoted to different positions with Defendant. To sustain her race discrimination claim based on failure to promote, Plaintiff must first establish a prima facie case by showing that (1) she was not promoted; (2) she was qualified for the position she sought; (3) she fell within a protected class at the time of the failure to promote; and (4) Defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote Plaintiff because of her race. *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

Plaintiff has met her prima facie burden on three of the four prongs in her failure to promote claim, as Plaintiff has satisfied the "very minimal showing" required to satisfy the qualified prong by alleging that she was qualified by her work experience, had consistently performed the duties of the executive administrative assistant, and her immediate supervisor said she was doing a great job with these additional responsibilities; it is undisputed that Plaintiff is a member of a protected class; and it is undisputed that Defendant gave each of the positions sought by Plaintiff to Caucasian females outside Plaintiff's protected class. However, for the reasons stated below, Plaintiff has failed to meet her burden on the first prong required to establish her prima facie case.

To satisfy the first prong of her prima facie failure to promote case, Plaintiff must show that an adverse employment action occurred within the meaning of Title VII. Plaintiff, who was

---

Section 1981 claims even prior to the Supreme Court's holding in *Gross*. *See Mabra v. United Food & Commercial Workers Local Union No. 1996*, 176 F.3d 1357, 1357 (11th Cir. 1999) (comparing the language of both statutes and determining an extension of the mixed-motive framework to Section 1981 claim would be inappropriate); *Aquino v. Honda of Am., Inc.*, 158 F. App'x 667, 676 (6th Cir. 2005) ("Congress inserted the specific statutory provision [supporting the mixed-motive framework] only into Title VII . . . it did not amend [Section] 1981 in an analogous fashion").

6

the nursing administrative assistant, desired to be hired as an executive administrative assistant. She was never hired in this position.[3] "Title VII was not enacted to address every employment decision," such as an employer's denial of an employee's request for a purely lateral transfer. *McFall v. Gonzales*, 143 F. App'x 604, 608 (5th Cir. 2005) (per curiam) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999)). "A determining factor in the analysis is whether [Plaintiff's] employment status would have been significantly altered had [Defendant] granted her request[s]." *See id.* "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action" for purposes of Title VII. *Banks*, 320 F.3d at 575 (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001)). "To be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves <u>objectively</u> worse—such as being less prestigious or less interesting or providing less room for advancement." *Sharp v. City of Houston, Tex.*, 164 F.3d 923, 933 (5th Cir. 1999). "This determination cannot be based upon an employee's subjective belief that he suffered an adverse employment action, but rather on a determination that the employer's decision was <u>objectively</u> equivalent to a demotion either in form or substance." *McFall*, 143 F. App'x at 608–09 (emphasis added).

---

[3] The Court notes that there is some question as to whether Plaintiff actually applied for the position of executive administrative assistant/director of marketing vacated by Walker and later filled by Woods. Failure to apply for a disputed promotion will generally bar a failure to promote claim. *Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 312 (5th Cir. 2010) (per curiam) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999)); *see also Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 406 (5th Cir. 2007) (unpublished) (finding no prima facie showing of "failure to promote" where employee failed to apply for the promotion at issue). In her complaint, Plaintiff concedes she "did not actually apply for the position which Woods received because of Defendant's misrepresentation as to the nature of the job and job duties of the position available." Pl.'s Compl. [1] ¶ 8. However, Plaintiff testifies in her deposition: "There was no need to apply for the position, because I had spoken with [the CEO] and explained to him that I was interested. . . . [T]he [application] process has always been you talk to your manager . . . and then you talk to the person that's over the position." *See* Pl.'s Dep. [44-1] at 172. The Court finds that Plaintiff has sufficiently alleged that she applied for the position at the prima facie stage.

Although Plaintiff alleges that her requests to be hired as the executive administrative assistant/director of marketing were requests for promotion, Defendant argues that Plaintiff has failed to show that the positions she sought were "objectively superior" to her own and that they were instead requests for lateral transfer. The Court finds this argument to be well taken. First, no evidence suggests that Plaintiff's benefits would have increased in the desired position, and it is undisputed that the individuals who were hired in that position earned less than Plaintiff did at all times. *See* Bufkin Decl. [38-3] ¶¶ 9, 11–14. Second, Plaintiff has not shown that the position she sought was objectively more prestigious. Although Plaintiff's requests to be transferred to the executive administrative assistant/director of marketing position were denied, she remained the nursing administrative assistant until the desired position was eliminated and Plaintiff was moved into the new administrative assistant position. If she had obtained the desired position, her employment status would not have been "significantly altered." No evidence before the Court suggests that the desired position would have in fact been a promotion; rather, the evidence suggests that the desired position would have constituted a lateral transfer.

Further, after Defendant replaced Walker with Woods and Woods left the position, Defendant eliminated the position and created the administrative assistant position to which it moved Plaintiff, and later, the credentialing and contract compliance position to which it moved Wiley, and the marketing position to which it moved another employee, Barbara Livingston. In the new administrative assistant position, it is undisputed that Plaintiff has taken on additional job duties and actually received an increase in pay. It is also undisputed that Plaintiff does not report to Wiley and Wiley does not report to Plaintiff. *See* Pl.'s Dep. [44-1] at 210; McCollum Dep. [44-6] at 9. Plaintiff's subjective belief that she was not promoted, together with the undisputed fact that Plaintiff has never had her own office, are not sufficient to show that she

8

was in fact not promoted for Title VII purposes. The Court finds that Plaintiff has not satisfied the first prong of her prima facie case. Thus, her claim must be dismissed on this ground.

However, the Court will proceed with the analysis, assuming, *arguendo*, that Plaintiff has demonstrated that she was not promoted, and thus that Plaintiff has met her initial burden on all four prongs of her failure to promote claim and has raised an inference of intentional discrimination which Defendant must rebut by providing a legitimate and non-discriminatory justification for the adverse employment actions. *See Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995).[4]

### b. *Legitimate, Non-discriminatory Reasons for Adverse Employment Actions*

The Court now turns to examine whether Defendant has articulated a legitimate justification for the alleged adverse employment actions of not promoting Plaintiff. Defendant contends that its legitimate, non-discriminatory reason for denying promotion was the honest and

---

[4] The Court notes that although Plaintiff's complaint does not state a disparate pay claim, some language in her response to the motion for summary judgment seems to suggest that she is also urging a disparate pay claim. Plaintiff has waived the opportunity to raise a disparate pay claim by presenting it for the first time in her response to the motion for summary judgment. *See Criner v. Tex.-N. M. Power Co.*, 470 F. App'x 364, 371 (5th Cir. 2012) (per curiam) (citing *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court")). However, even if the claim had been raised properly, it fails on its merits. "To state a prima facie claim for disparate pay, a plaintiff must show that she was a member of a protected class and was paid less than a non-member for substantially the same job responsibilities." *Goring v. Bd. of Sup'rs of La. State Univ.*, 414 F. App'x 630, 633 (5th Cir. 2011) (per curiam); *see Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). "This requires showing that her circumstances were 'nearly identical' to those of a better-paid, non-protected employee." *See Goring*, 414 F. App'x at 633. It is undisputed that in February of 2010 Lauren Walker, then-executive administrative assistant, was given an additional title: director of marketing. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 4–5; Pl.'s Dep. [44-1] at 155, 163–64, 168; Def.'s Mem. Br. Supp. MSJ [39] at 3. It is further undisputed that at that point Plaintiff took on some of Walker's executive administrative assistant duties and moved from the nursing administration office to the administrative suite. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 5; Pl.'s Dep. [44-1] at 127–28, 137–38; Def.'s Mem. Br. Supp. MSJ [39] at 3. Plaintiff alleges that she was not given her promised pay raise as the nursing administrative assistant with additional executive administrative duties, but that Walker, a Caucasian female, was given her promised pay raise as the executive administrative assistant/director of marketing. *See* Pl.'s Dep. [44-1] at 127–28, 137–38. This allegation does not support that Plaintiff's responsibilities were substantially the same or that her circumstances were nearly identical to the circumstances of her comparator, Walker. *See Goring*, 414 F. App'x at 633–34. Thus, to the extent Plaintiff has attempted to assert a disparate pay claim, she has failed to raise a genuine dispute of material fact on the claim and it must be dismissed.

good-faith belief that each person ultimately selected for the positions was the better qualified candidate.

Specifically, Defendant maintains that Woods was hired to replace Walker as executive administrative assistant/director of marketing because Woods had a Bachelor of Arts degree and experience in marketing through her prior employment. Defendant cites in support the deposition testimony of Joann McCollum, Defendant's chief nursing officer, who testifies that she had some input in interviewing and deciding who would replace Walker in the executive administrative assistant/director of marketing position, and that she recommended Woods "[b]ased on her skill set of working at the Delta Arts Alliance, I think she was like the executive director and had a degree in arts, her skill set would qualify, I thought, as marketing." *See* McCollum Dep. [38-2] at 13.

Defendant further maintains that after Woods left, Defendant reorganized existing positions to maximize efficiency and "better align duties based on skill sets." *See* Def.'s Mem. Br. Supp. MSJ [39] at 4; McCollum Dep. [38-2] at 15. According to Defendant, this meant eliminating the positions of executive administrative assistant/director of marketing (which was left vacant by Woods) and nursing administrative assistant (which was then held by Plaintiff). McCollum testifies that Plaintiff's skill set included those administrative duties she performed as a nursing administrative assistant. McCollum Dep. [38-2] at 18. McCollum testifies that although Wiley was then a receptionist, her skill set and background was in human resources which made her a good fit for credentialing and contract compliance. *Id.* at 18–19. McCollum compares Wiley's job in credentialing to her previous experience in human resources as follows:

> Credentialing is very similar to human resources. When you credential a physician, you have to get—go through a primary data source and get all of their background information, primary source verification of their education, anything to do with their—it's very

10

> similar to an HR role. Credentialing a physician, you've got to make sure you know . . . their limits of liability for insurance. It's just like making a human resources file except probably a little more detailed. And that's [Wiley's] background.

*Id.* at 19. When asked about Wiley's job in contract compliance compared with her previous experience, McCollum states:

> [Wiley] managed the clinics, or she was receptionist for the clinics. And as far as making sure that files were in order, making sure if there was something that's got to be contract complied with the physicians, equipment or just like practicing, making sure—with contract coordinator, what she's doing is just making sure those contracts flow through the system in an organized manner. And she proved that with references . . . in the clinic . . . .

*Id.* at 19–20.

Defendant's proffered reasons for these hiring decisions are sufficient to rebut Plaintiff's case on a prima facie level. *See Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) ("[C]hoosing some other candidate because he is the best-qualified individual for the job is generally a legitimate, nondiscriminatory reason for an adverse employment action."). Thus, the burden shifts back to Plaintiff to show pretext or mixed motives.

### c. Pretext/Mixed Motives Alternative

Plaintiff argues that Defendant's decisions not to promote her to the positions were pretext for race discrimination. To satisfy pretext, Plaintiff must show either that Defendant's proffered explanation was false or unworthy of credence or Plaintiff was clearly better qualified than the applicant chosen for the promotion. *See Burrell v. Dr Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). A plaintiff bringing a race discrimination claim

> need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act. . . . It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.

*Nassar*, 133 S. Ct. at 2522–2523 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

To show that she was clearly more qualified and to raise a fact question as to whether race discrimination was a factor in Defendant's decision to hire others to fill the positions Plaintiff sought, Plaintiff "must present evidence from which a jury could conclude that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (quotation marks and citation omitted). "Showing that two candidates are similarly qualified does not establish pretext under this standard." *Price*, 283 F.3d at 723. "[B]etter education, work experience, and longer tenure with the company do not establish that [Plaintiff] is clearly better qualified." *See id.*; *see also Nichols v. Lewis Grocer*, 138 F.3d 563, 568–69 (5th Cir. 1998) (losing applicant's longer tenure and more varied work experience with the company did not make her "clearly better qualified" than the winning applicant). "The bar is high because '[u]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision . . . differences in qualification are generally not probative evidence of discrimination.'" *Murchison v. Cleco Corp.*, 544 F. App'x 556, 560 (5th Cir. 2013) (per curiam) (quoting *Moss*, 610 F.3d at 923) (in turn quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 347 (5th Cir. 2001) (internal quotation marks omitted))).

Plaintiff alleges that "[b]y any objective standard, [Plaintiff] was the far better candidate" and "no reasonable person would have selected Woods, or Wiley, over [Plaintiff]." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 18–19. Plaintiff further alleges that Defendant's proffered reasons for its failure to promote Plaintiff are "purely. . . subjective." *Id.* at 19. Plaintiff maintains that "[a] reasonable jury could conclude that the reasons given by Defendant

for selecting Woods and Wiley over [Plaintiff] are not credible because [Plaintiff] was clearly the better candidate" and that "the reason [Plaintiff] was not selected for the positions" is because she is African American. *Id.* at 20.

Plaintiff contends that she had worked for Defendant approximately nine years when she was denied promotion to the desired executive administrative assistant/marketing director position; that she has extensive marketing experience in her separate personal businesses (though she concedes that Defendant was not aware of her personal businesses, *see* Pl.'s Dep. [44-1] at 30, 31); and that she has an associate's degree in criminal justice, a degree in paralegal studies, and has taken courses in economics. She also contends she was performing several administrative job duties of the position while still a nursing administrative assistant; the record supports that she had taken on some of the administrative duties of the position, but that she was not familiar with the job description for the former executive administrative assistant position. *See id.* at 138, 180, 192, 193. She further contends she had experience in the contract compliance and credentialing parts of the position, which she reiterates in her deposition, but the record does not otherwise support this contention. Plaintiff additionally contends that she was consistently an excellent employee of Defendant, having received a merit award in 2008 and otherwise demonstrating excellence in her work; the record supports that she was considered a good employee, although some evidence suggests that Defendant considered her to have some room for improvement. *See, e.g.*, McCollum Dep. [44-6] at 24 ("There's times I've had to talk to [Plaintiff] about . . . something misspelled or something left out of a minute . . . ."); Sigler Dep. [44-8] at 7 ("There may have been some times where there were some concerns about some particular duties that were performed. . . . There were some responsibilities for maintaining some of the minutes of some meetings . . . that when . . . the minutes of those meetings were

13

requested, that upon a review of those records, they were incomplete and not maintained as accurately as they should have been."); *Id.* at 29 ("I felt like there were things that I could not assign to [Plaintiff] because I didn't feel like they would be done the way that I wanted them to be done. . . . I did not feel that she was capable of preparing [a] report [for me] the way that I would have wanted it to be done. . . . I didn't really feel like that she was capable and qualified and knowledgeable to prepare those types of things adequately."). Finally, Plaintiff contends that Defendant's former CEO Wes Sigler "admitted that the plan was for [Plaintiff] to take Walker's job when she left." Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 18. Wes Sigler actually testifies in his deposition that when Plaintiff was moved into the administration suite, the intent was for her to take over Walker's administrative clerical duties in the executive administrative assistant role—not the credentialing and contract compliance duties of that position—but that even some of the administrative duties were not shifted to Plaintiff. *See* Sigler Dep. [44-8] at 30–31 ("There were certain [administrative] roles that . . . [Walker] kept that [Plaintiff] just never assumed, never got up to speed on exactly how to do those things correctly.").

As stated above, Defendant hired Woods to replace Walker as executive administrative assistant/director of marketing. Defendant maintains that Woods had a Bachelor of Arts degree and experience in marketing through her prior employment that made her a good fit for the position. In her response to the motion for summary judgment, Plaintiff argues that Woods had no experience with Defendant, no medical experience, no contract compliance experience, no credentialing experience, and some marketing experience though not in the health-care industry. Plaintiff cites no evidence in support of these statements about Woods' qualifications for the job. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 15, 19. "[U]nsupported allegations

14

or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quotation marks and citation omitted). And in her deposition, Plaintiff testifies she did not know the duties of the position or Woods' qualifications for the job. *See* Pl.'s Dep. [44-1] at 138, 180, 192–93. Plaintiff's arguments concerning Woods' qualifications for the position are not sufficient to raise a genuine dispute with respect to pretext.

Further, as stated above, Defendant hired Wiley in the newly created contract compliance and credentialing position. Defendant maintains that Wiley's skill set and background in human resources made her a good fit for the position. Plaintiff argues in her response to the motion for summary judgment that "Wiley was even less qualified than Woods" with no contract compliance or credentialing experience, no hospital experience, and no college degree. Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 8. Plaintiff maintains that, "[b]y her own admission, Wiley was not qualified to handle the advertising/marketing duties of her job and those duties were given to Betty Britt." *Id.* However, in Plaintiff's deposition, she testifies that she did not know Wiley's qualifications for the position, nor was she familiar with the responsibilities of the position. *See* Pl.'s Dep. [44-1] at 138, 180, 192–93. In her deposition, Wiley testifies that she had a high school diploma and had taken some college courses at Mississippi Delta Community College, Wiley Dep. [44-3] at 6–7; that she had never worked in a hospital prior to working for Defendant, *id.* at 9; that she worked as a receptionist for a neurologist before she began working for Defendant and that her job duties were similar to those she now performs in the credentialing aspect of her position with Defendant, *id.* at 8, 10–11; that she managed a temporary staffing agency for nine years where she performed human resources functions, *id.* at 11; that she worked in human resources at a factory for seven years prior to that,

15

*id.* at 11–12; that Defendant initially hired her as a receptionist, *id.* at 8–9; that "because of [her] previous [human resources] experience," she began helping in Defendant's human resources department when things were slow in her receptionist job, *id.* at 12–13; that she asked if there were any other job openings with Defendant, *id.* at 13; that her credentialing and contract compliance position is not a supervisory role and that she has her own office because she has to keep confidential files, *id.* at 15; that her sole job duties relating to advertising were approving bills for advertising that came through once or twice a month, *id.* at 18; and that Defendant created a position devoted exclusively to advertising/marketing and moved Betty Britt into that position, *id.* Plaintiff's arguments concerning Wiley's qualifications for the position are not sufficient to raise a genuine dispute with respect to pretext.

The Court finds that Plaintiff has failed to raise a genuine dispute of material fact that she was clearly better qualified than either Woods or Wiley for their respective positions. Any perceived disparities in qualification are not so great that no reasonable person could have chosen someone else to fill the positions sought by Plaintiff. The Fifth Circuit has held that "an employer's decision to hire an individual without a college degree, but with substantial relevant work experience, over an individual with a college degree is not sufficient to establish pretext." *See Criner*, 470 F. App'x at 371 (citing *Price*, 283 F.3d at 722–23). The Fifth Circuit "has rejected the argument that a longer tenure alone suffices to establish pretext." *Ruth v. Owens-Ill. Glass Container, Inc.*, 260 F. App'x 703, 705 (5th Cir. 2007) (per curiam) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996); *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 959 (5th Cir. 1993)). At best, Plaintiff has shown "that there were subjective factors that went into the interview process, e.g., the weighing of experience versus education credentials— something that no one disputes." *See Criner*, 470 F. App'x at 370. The law is well established

that a subjective decision making process does not raise inferences of discriminatory conduct. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988); *Criner*, 470 F. App'x at 367 (quoting *Bodenheimer*, 5 F.3d at 959 ("Judicial review of discrimination claims is 'not intended to be a vehicle for judicial second-guessing of employment decisions, nor [is] it intended to transform the courts into personnel managers.' ")). "We are left with [Plaintiff's] subjective belief that the decision[s were] discriminatory, which is insufficient to create an inference of pretext." *See Goring v. Bd. of Sup'rs of La. State Univ.*, 414 F. App'x 630, 632 (5th Cir. 2011) (per curiam) (citing *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999)). Overall, Plaintiff has failed to present sufficient evidence from which a fact finder could reasonably conclude Defendant's proffered reasons were false or that Plaintiff was clearly better qualified. Thus, the Court finds that Plaintiff has failed to satisfy pretext on her race discrimination claims. *See, e.g., Monteverde v. New Orleans Fire Dep't*, 124 F. App'x 900, 905–06 (5th Cir. 2005) (plaintiff's evidence that he had a bachelor's degree in the particular field, continued his education and training, had demonstrated good work performance, was recommended for a promotion, and was qualified for the job responsibilities were all insufficient to overcome employer's proffered reason that it promoted another employee who was better qualified).

Plaintiff further argues that, assuming there is an indicia of reliability to Defendant's proffered reason for not promoting Plaintiff to the positions she sought, a reasonable jury could conclude that Plaintiff's race was a motivating factor for Defendant's decisions. "To find for the plaintiff in an employment-discrimination context, [the Court] must find that there was an impermissible motive in making the employment decision." *See Criner*, 470 F. App'x at 367; *see also LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). An

employer is entitled to summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S. Ct. 2097. Plaintiff "believes she was treated differently because of her race" and asserts that she is the only African American working in Defendant's administrative office and that Defendant has consistently promoted Caucasians. *See* Pl.'s Mem. Br. Supp. Resp. Opp'n to Def.'s MSJ [43] at 6. These allegations are insufficient to raise a genuine dispute of material fact as to whether race was a motivating factor in Defendant's decisions. Accordingly, because Plaintiff has failed to show that she suffered an adverse employment action and because she has failed to demonstrate pretext or mixed motives, summary judgment is proper on Plaintiff's race discrimination claims.

### D. Conclusion

In sum, Defendant's motion for summary judgment [38] is GRANTED, all claims against Defendant are DISMISSED, and this case is CLOSED.

A separate order in accordance with this opinion shall issue this day.

THIS, the 3rd day of June, 2014.

                                                                   SENIOR JUDGE